46 F.3d 1129
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Damon STRADWICK, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daryl SMITH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Personne Elrico McGHEE, Defendant-Appellant.
 Nos. 94-5095, 94-5097, 94-5098.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Dec. 20, 1994.
Decided: Jan. 20, 1995.
 
 Paul McKay, Weirton, WV, for Appellants.
 William D. Wilmoth, United States Attorney, Thomas O. Mucklow, Assistant United States Attorney, Paul T. Camilletti, Assistant United States Attorney, Wheeling, WV, for Appellee.
 Before NIEMEYER and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants appeal their convictions after a jury trial on counts related to a conspiracy to distribute crack cocaine. Appellant Smith argues that the trial court erred in refusing to quash the superseding indictment and in denying his motion for continuance. Smith also contends that the district court abused its discretion in admitting into evidence at trial a pistol police discovered in a search Smith claims was pursuant to a flawed seizure of his car. Both Appellants Stradwick and McGhee assign error to the admission of a letter written by Stradwick to McGhee while Stradwick was in jail. Finally, Stradwick argues that he was entitled to a mistrial because the prosecution referred to the same letter as a confession in closing arguments. Because we find these arguments to be without merit, we affirm each of the convictions.
 
 
 2
 * Smith initially contends that the superseding indictment obtained by the Government was fatally flawed because the prosecution did not present any evidence to the grand jury. Generally, a defendant may not challenge a facially valid indictment returned by a legally constituted grand jury on the basis that the evidence presented to the grand jury was insufficient. United States v. Calandra, 414 U.S. 338, 345 (1974); Costello v. United States, 350 U.S. 359, 363 (1956). This Court reviews indictments only for constitutional error, see United States v. Mills, 995 F.2d 480, 488 (4th Cir.), cert. denied, 62 U.S.L.W. 3252 (U.S.1993), and prosecutorial misconduct. See United States v. Schmidt, 935 F.2d 1440, 1444-46 (4th Cir.1991).
 
 
 3
 Smith does not allege prosecutorial misconduct per se,[1] rather, he argues that the prosecution failed to put on any evidence whatsoever in obtaining the superseding indictment. However, Smith presents virtually no evidence that this is what in fact occurred. His argument is based on his recollection of a Government attorney's assertion that he "had gone before the Grand Jury and explained that a clerical error had been made, so that a superseding indictment was needed." Appellants's Br. at 15.
 
 
 4
 Aside from the fact that Smith makes a prodigious logical leap in concluding from one remark that the Government presented no evidence to the grand jury in obtaining the superseding indictment, even if there was error of this kind, it does not necessitate reversal. Here, as in Mills, "[t]o find a reversible error[ ], this Court would have to conclude the grand jury could not have found probable cause to indict a man on evidence which convinced a petit jury, beyond a reasonable doubt, to convict." Mills, 995 F.2d at 488. Because Smith was convicted at trial of the gun charge by evidence beyond a reasonable doubt, we find that any deficiency in the evidence before the grand jury, including an alleged complete lack of evidence, is not a sufficient basis for reversing the conviction. Id. at 488-89.
 
 II
 
 5
 Smith next argues that the district court erred in refusing to grant a thirty-day continuance following the superseding indictment. Although a defendant is entitled to thirty days from the time he first appears to the beginning of trial, 18 U.S.C. Sec. 3161(c)(2), the thirty-day period need not be restarted on the filing of a superseding indictment. United States v. Rojas-Contreras, 474 U.S. 231, 234 (1985). Rather, the decision to grant a new thirty-day period is committed to the "broad discretion" of the trial judge by the Speedy Trial Act. 18 U.S.C. Sec. 3162(h)(8); Rojas-Contreras, 474 U.S. at 236.
 
 
 6
 Here, the district court concluded that Smith had notice of the impending change in the indictment at the time the Government initially moved to amend the indictment. The trial judge further noted that if he believed the Defendants were unfairly prejudiced by the superseding indictment he would have afforded the Defendants additional time. Finally, in denying the motion, the district court remarked that "all the parties [were] very well prepared, and ... aware of the crime and crimes charged." J.A. 179. From the court's statements it is clear that the court exercised its discretion regarding the additional time, adequately took into account notice and prejudice, the judicially recognized factors constraining the decision, and the ruling was not flawed by erroneous factual or legal premises. See James v. Jacobson, 6 F.3d 233, 239 (4th Cir.1993) (suggesting framework for considering claims of abuse of discretion). Accordingly, the district court did not abuse its discretion in declining to grant Smith the additional thirty days. This assignment of error is without merit.
 
 III
 
 7
 Smith argues that the district court abused its discretion in admitting a pistol recovered from his car when it was impounded pursuant to West Virginia's civil forfeiture statute. W. Va.Code Ann. Sec. 60A7-701 to -707 (Michie 1992 Repl.Vol.). Smith frames his argument as whether evidence originally ruled inadmissible under "Fed.R.Evid. 403(b)" [sic][2] may later become admissible to impeach a defendant. The transcript reveals only that the district court deferred ruling on the admissibility of the pistol under Rule 404(b) and Rule 403. There was no explicit ruling to exclude the evidence.
 
 
 8
 Evidence is inadmissible under Rule 403 where there is " 'a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.' " Mullen v. Princess Anne Volunteer Fire Co., 853 F.2d 1130, 1134 (4th Cir.1988) (quoting Morgan v. Foretich, 846 F.2d 941, 945 (4th Cir.1988)). This Court reviews the district court's determination for an abuse of discretion. United States v. Simpson, 910 F.2d 154, 157 (4th Cir.1990). There was virtually no risk that the jury would be "excited to irrational behavior." A handgun found in an impounded car in a drug conspiracy investigation is hardly exciting or even unusual.
 
 
 9
 Rather than discuss the potential for jury prejudice as a result of the admission of the gun, Smith seems to cast his argument more in terms of prejudice to his defense. Smith makes a disjointed argument about the denial of the continuance depriving him of the opportunity to prepare for the introduction of the gun. According to Smith, the "testimony about the gun might reasonably have been kept out." Appellants's Br. at 20. This, in turn, would have made "any mention about the gun ... even more remote, and more clearly prejudicial under the rule." Id. Smith's argument misunderstands the nature of the prejudice element of the Rule 403 inquiry and is therefore without merit. _________________________________________________________________
 
 IV
 
 10
 Notwithstanding his argument pursuant to Rule 403, Smith next contends that the district court committed error by allowing the Government to introduce the evidence obtained in the inventory search of Smith's vehicle when it was impounded. He argues the seizure of the vehicle was flawed and the fruits of the inventory search pursuant to the deficient seizure should not have been admitted. Smith concedes on appeal that there was neither an objection to the admission of the evidence at trial nor a motion to suppress before the trial. This Court reviews such assignments of trial error on appeal only for plain error. United States v. Olano, 61 U.S.L.W. 4421, 4423 (U.S.1993). Olano contains a four-part analysis; there must be (1) error, (2) that is clear under current law, (3) which affects substantial rights and (4) which affects the " 'fairness, integrity or public reputation of judicial proceedings.' " United States v. Hanno, 21 F.3d 42, 45 (4th Cir.1994) (quoting Olano, 61 U.S.L.W. at 4424). Despite arguing it was plain error for the district court to admit the evidence, Smith cites only a district court case which holds that the lawfulness of the impoundment may help a court infer an improper motive for the government's actions. United States v. Abbott, 584 F.Supp. 442, 447 (W.D. Pa.), aff'd, 749 F.2d 28 (3d Cir.1984). This district court opinion falls far short of making any error clear under current law.
 
 
 11
 Initially, it is not clear from the record that the seizure of the car was improper. Smith claims that because he was not properly served with a petition for forfeiture, the forfeiture proceedings were deficient. The Government argues that because Smith was in jail, he was unable to make arrangements for the vehicle's protection and there was, therefore, no need to confer with him. See State v. Perry, 324 S.E.2d 354, 358 (W. Va.1984) (noting no necessity to contact unavailable owner of target vehicle). Even assuming that as Smith argues, he was "eminently available" while he was imprisoned, there was no plain error in admitting evidence obtained from the inventory search.
 
 
 12
 Contrary to Smith's suggestion that a civil forfeiture begins with the filing of a petition, the West Virginia statute only requires filing of the petition "within ninety days after the seizure of the property in question." W. Va.Code Ann. Sec. 60A-7-705(a)(4). Accordingly, there was no government misconduct at the time of the seizure of the vehicle that would transform the inventory search into a ruse for a general rummaging for incriminating evidence that would require the district court to refuse to admit the gun. See Florida v. Wells, 495 U.S. 1, 4 (1990). Further, the interests behind the propriety of an inventory search[3] would be totally defeated if the state were allowed to seize the vehicle but then required to wait until the petition had been filed to inventory its contents.
 
 
 13
 Even assuming the forfeiture and subsequent search were somehow illegal, two other factors in this case cut against Smith's argument. The gun was only admitted to impeach Smith's testimony that he had never had possession of any gun other than the one for which he was charged with using in commission of a drug crime. The gun was not admitted into evidence to prove any element of the Government's case. Prosecutors may use illegally obtained evidence for the limited purpose of impeaching the defendant's own testimony. See United States v. Havens, 446 U.S. 620, 626 (1980); Oregon v. Hass, 420 U.S. 714, 722-23 (1975); see also Michigan v. Harvey, 494 U.S. 344, 350-51 (1990). Smith does not contend that the pistol was used for any other purpose at trial. Further, Smith does not argue that the police lacked probable cause to seize the vehicle without resorting to the forfeiture statute. The prosecutor told the judge before the trial that the car was searched pursuant to a warrant. The district court could have justifiably relied on this assertion which defense counsel failed to contradict. Therefore, the district court did not commit plain error in admitting the gun for the purpose of impeaching Smith.
 
 V
 
 14
 Both Stradwick and McGhee argue that the district court erred in admitting into evidence a letter written by Stradwick. They maintain that the letter's prejudicial effect "far outweighed" its probative value and was therefore inadmissible under Fed.R.Evid. 403. As noted above, evidence is inadmissible due to unfair prejudice under
 
 
 15
 Rule 403 where there is " 'a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.' " Mullen, 853 F.2d at 1134. This Court again reviews the district court's determination for an abuse of discretion. Simpson, 910 F.2d at 157.
 
 
 16
 Stradwick and McGhee argue that the letter was unduly prejudicial because Stradwick was imprisoned at the time he wrote the letter, seemed unaffected by the conditions in prison, and used a racial slur to refer to white inmates. They also note that the letter refers to a "money thing" that the jury probably assumed was an illegal enterprise. According to Stradwick and McGhee, the only probative value of the letter was to prove that Stradwick knew McGhee and warned him that a federal investigation was underway. The Government, in response, downplays the prejudicial effect of the letter, suggesting that the illegality of the "money thing" was only an inference of defense counsel. The Government contends that the letter was important probative evidence of the existence of the conspiracy.
 
 
 17
 In this case, there is virtually no risk of irrational behavior on the part of the jury as a result of the letter. The contents of the letter are relatively unremarkable in terms of potential prejudice to either Stradwick or McGhee. See, e.g., United States v. Ham, 998 F.2d 1247, 1252-53 (4th Cir.1993) (finding an abuse of discretion in court's admission of evidence of child molestation, homosexuality, and abuse of women). The letter's probative value in establishing the conspiracy is significant. The district court did not abuse its discretion in concluding that this probative value was not outweighed by the remote chance the jury would react irrationally to an offhand racial slur, a fleeting reference to a dubious "money thing," and Stradwick's bored attitude regarding prison life. This assignment of error is without merit.
 
 VI
 
 18
 Finally, Appellant McGhee objects to the prosecution's characterization of the letter discussed above. McGhee contends that in closing arguments the prosecutor referred to the letter as a confession. There was no objection by any of the Defendants to the prosecution's closing argument. Absent plain error, an improper closing argument by the prosecution is not grounds for reversal where the defendant has not objected and moved for a mistrial. United States v. DePew, 932 F.2d 324, 327-28 (4th Cir.), cert. denied, 60 U.S.L.W. 3263 (U.S.1991). This Court has outlined four factors to be considered in determining whether improper prosecutorial comment requires reversal: (1) the degree to which the remarks had a tendency to mislead the jury and prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) the strength of competent evidence to establish guilt absent the remarks; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983), cert. denied, 466 U.S. 972 (1984). Under this test, McGhee's claim fails.
 
 
 19
 The first factor cuts in favor of McGhee. While the prosecutor did not actually say that the letter was a "confession," the prosecutor did argue that Stradwick "confessed about the conspiracy" in the letter. The similarity of the two words would tend to mislead the jury to some extent. Further, the significant legal impact assigned to a confession could prejudice McGhee regarding the existence of the conspiracy. Nonetheless, each of the three other factors weigh against McGhee.
 
 
 20
 The remark was nearly as isolated as possible. The prosecutor referred to the letter and used the word "confessed" twice in closing and not at all in rebuttal. In addition, the evidence to prove the conspiracy against McGhee is strong. Several witnesses testified that McGhee not only had supplied them with crack cocaine, but also that he was at the head of a significant network. Finally, the comment was made to direct the jury's attention to a significant piece of evidence regarding the conspiracy, not to extraneous matters.
 
 
 21
 There is no possibility that the two comments regarding the letter infected the trial with unfairness to the extent that the resulting conviction was a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986). The trial court did not commit error at all in failing to declare a mistrial after the prosecution's closing argument, much less plain error.
 
 
 22
 Finding no merit to any of the Appellants's assignments of error, we affirm the convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Even if he had, any error was harmless. "[A] post-verdict claim of prosecutorial interference with the grand jury's determination of probable cause is rendered harmless by the verdict of the petit jury unless the defect is 'so fundamental that it causes the grand jury no longer to be a grand jury, or the indictment no longer to be an indictment.' " Schmidt, 935 F.2d at 1446 n. 2 (citations omitted) (quoting Midland Asphalt Corp. v. United States, 489 U.S. 794, 802 (1989)). On the record before the Court, we cannot say that such a fundamental error occurred
 
 
 [2]
 Even if Smith is attempting to assign error to the district court under Rule 404(b), his argument is without merit. There is nothing in the record that would show that the pistol itself is associated with any of Smith's prior bad acts. Nor is there anything that would lead to the conclusion that the introduction of the pistol was intended to prove Smith's bad character. The Government introduced the pistol to impeach Smith's statement that he never bought, borrowed, or carried guns other than his Derringer. Evidence that is inadmissible to prove character under Rule 404(b) may be admissible for other purposes, including impeachment. United States v. Stockton, 788 F.2d 210, 219 n. 15 (4th Cir.), cert. denied, 479 U.S. 840 (1986). The district court did not abuse its discretion in failing to rule that the pistol was inadmissible under Rule 404(b). Mills, 995 F.2d at 485
 
 
 [3]
 Those interests are the protection of the contents of the vehicle from loss or theft and the protection of the impounding agency from possible destructive devices in the impounded vehicle. Colorado v. Bertine, 479 U.S. 367, 372 (1987)